Good morning, Your Honor. My name is Michael Peschetta. I represent Mr. Sechrest in this matter. If I may, I'd like to reserve five minutes for rebuttal, and I will keep an eye on the time. I beg your pardon. I thought I was tuning this, making it buzz. My name is Michael Peschetta. I'm representing Mr. Sechrest in this matter. I would like to reserve five minutes for rebuttal, if I could. And I will keep track of the time. This case doesn't come back to this Court on a clean slate. Of course, this Court reversed the death sentence in this matter and remanded for further proceedings on the guilt phase of the trial. This Court has already found that the prosecutor's misconduct in the penalty phase, in part, justified vacating the penalty. And in particular, the prosecutor's identification of himself with the jury or the jury with himself, analyzing that under United States v. Hume. In the guilt phase, we have more of the same. This is an issue that began with the opening statement in the guilt phase and proceeded all through both phases of the trial. But here, I think, we're not only talking about the reasons that underlie the United States v. Hume analysis, the danger that the jury will be impressed by the prestige of the prosecutor's office, his greater expertise, the possibility of personal knowledge of matters outside the record. But here, I think, what we have in the language that the prosecutor used is something more potent. It's language that puts him in the room. We're dealing with the Brex standard here. Ultimately, yes, Your Honor. So, you know, that's a big problem for you. It is a problem. It's not, I think, an insuperable problem. Because our position is that what the way in which the prosecutor characterized his role with the jury, that is, first off, is basically the first part of his closing argument is, and I'm quoting from page 168 of the EOR, it's been a pleasure, as it always is, to stand up here before 12 people of this county as their attorney. Well, I mean, let's assume that this was improper argument. It was not, but it was improper argument in a kind of gross sense. It didn't go specifically to a misstatement of the evidence or the instructions or whatever. So the question is, how does one take that and plug it into the evidence in this case to demonstrate that it had a sufficient impact under Brecht? I think the characterization of the prosecutor as the jury's lawyer is something that colors the entire proceeding. Okay, still, but I think you've got to get to the Brecht-Holmes error question or you're not going to get anywhere, so let's get there. Okay. Thank you. Thank you for the prompting, Your Honor. Everyone has argued, both the district court and the State, that everything is harmless, no matter what this prosecutor did, because of overwhelming evidence of guilt. But the question here is — My question is whether, just on his confession, nothing else, why wasn't that first-degree murder? Because that's not the only thing. That's not the only issue that was before the jury. From the beginning, the defense acknowledged that he committed the homicides in this case. I understand. I understand why it was a first-degree murder on any construction of what he said. There is a difference between first-degree murder reached, for instance, on a premeditation and deliberation theory, from a first-degree murder conviction reached on a felony murder kidnapping. But the claim is that this was a premeditation-deliberation verdict, so let's assume that. It is a general verdict, Your Honor, and the jury brought back guilty verdicts on the two counts of kidnapping as well. Were they instructed on felony murder? Yes. They were instructed on felony murder, and they were instructed on — with underlying — with the underlying felony being kidnapping. Well, then you have a bigger problem, because the issue before us, as I understand it, is not — I mean, I know that you had at some point a challenge to the felony murder instruction on the ground that it wasn't in the indictment, but that's not before us. So if we have a felony murder charge and a first-degree murder charge, then why isn't it even more clear that there — more likely that there's not a problem there? It's because it's a general verdict, and the evidence with respect to the felony murder theory is very much more controversial than what the simple statements in the defendant's statements are. If you look at the prosecutor's argument, and I think what we have to do is to look at under Young, not only whether the misconduct influenced the jury's ability to judge the evidence fairly, and that, I think, is this characterization as the jury's lawyer undercuts any ability of the jury to look at the evidence fairly aside from the assertions made by the prosecutor. But if you look at the argument of the prosecutor, he is arguing throughout, well, yes, it's first-degree premeditated and deliberated murder, but it's also felony murder. And it's felony murder because — I just read the closing argument. Did he ever argue felony murder as such separately? I didn't think so. He argues murder in the course of the kidnapping in a totally — I mean, there are whole passages here where he is talking about the sexual assault in E.O.R. Well, that's because he had separate charges. But with regard to the murder, did he ever argue felony murder as such? Yes. I mean, the argument is that at least this is how the prosecutor characterized the case, was that he had the — that Mr. Sechrest had the intent to sexually molest and or kill these girls the minute he took them to court. That's the kidnapping. So he is arguing throughout this closing, yes, it's murder in the course of kidnapping, and it's premeditation and deliberation. Now, the — and this is the reason that the prosecutor spends a huge amount of time talking about this dog leash. If you recall, a dog leash was found at the crime scene. And the prosecutor's position is that that dog leash was brought to the scene by Mr. Sechrest in order to tie up one of the victims. And this was the supposed relevance of the testimony of Mr. Sportsman that on some previous occasion, on one occasion in California, apparently years ago, years prior to the offense, he had been tied up by Mr. Sechrest consensually for sexual purposes. How many years ago? It can't have been that many years ago, because Sechrest was only 21 at the time of the crime. It was some time ago. Mr. Sechrest and Mr. Sportsman couldn't — didn't give a time. But it's not as though this could have been 20 years earlier. Well, no. It was not 20 years earlier. And the reason that this leash is important is that the prosecutor is trying to cast this kidnapping that this homicide — these homicides were supposedly in the course of as beginning at the earliest possible opportunity. And so he ends up arguing, we know he goes, I submit — I submit we know he goes with the leash. There is, in fact, nothing that conclusively links this leash to Mr. Sechrest. I understand that the whole leash thing was somewhat — was emphasized and was somewhat peripheral. But — but — and I guess was made to — you know, made — I thought that the point of it was to show that he always intended to enforce — to reinforce the notion there was a kidnapping because he brought them up there for sexual purposes, rather than the argument that there wasn't really a kidnapping, they just agreed to go with him. But — which I guess might still be a kidnapping. I don't know with regard to children that small. But — but still, I don't — there was no sexual assault charge as such. Right? No. It was a theory underlying first-degree murder, the first-degree kidnapping, prosecution, and the kidnapping for the purpose of killing and — But, for example, you gave it to me in cases recently about the fact that that sexual assault, you know, after death was — is not a crime. But that's not relevant because he was in charge with that crime. Well, but he was charged with murder on a felony murder theory that the jury was instructed on, as well as on — It wasn't sexual assault. But it is first-degree kidnapping. Right. On the theory that it is — that there was a sexual assault, an intended sexual assault. You need sexual assault to have a first-degree kidnapping. No, there's a — there are many theories that you can get to first-degree kidnapping. One is kidnapping for the purpose of murder. So, although it is — there is no evidence, at least the prosecutor did not articulate a theory, of why Mr. Seacrest would have kidnapped Ms. Schindler for the purpose of murdering her. But this is one of those statutes where, under Nevada law, you can be guilty of first-degree murder. But he could have kidnapped her for the purpose of sexual assault, even if he didn't actually sexually assault her while she was still alive. And, in fact, didn't he say something to the effect, I was thinking about what it would be like to rape a little girl or something like that? That's after — After what? That's after the homicides. Well, no — Because that's what his statement is. I thought his statement was that he was thinking about it beforehand. So after she died, he thought she would — whatever. It doesn't matter, because if he kidnapped her for the purpose of sexual assault, when he actually sexually assaulted her is not relevant. And that's exactly the problem, Your Honor, is that the time when this intent, this alleged intent to commit sexual assault arose, is fundamental to the question of either felony murder or murder by — or kidnapping for the purpose of sexual assault, which is the felony underlying.  Now, let me say — As I understand it, this whole theory that this was really a felony murder conviction is not your briefs. Well, but if we have articulated it badly, I apologize. But our point is the jury was instructed on felony murder as well as premeditated and deliberated murder. And we have a general verdict. So we can't tell whether the jurors unanimously said, all right, we find premeditation and deliberation. And the reason why you think that the felony murder conviction, if that's what it was, wasn't at least weak and arguable is exactly what? Is that the question of when this intent, this intent to commit a sexual act on Ms. Schindler arose, is very much in doubt. Because even the prosecutor, because he is arguing about this leash issue, it's — when he's arguing about Mr. Seacrest not admitting to bringing the leash, as the prosecutor characterizes that, it's because Mr. Seacrest knows he can't admit to bringing the leash, because that will show he had the intent to commit the sexual act from the beginning, and not only after Ms. Schindler was dead. And that's the part about this case where the evidence is not overwhelming. Let me ask you another question. For purposes of Brecht, not substantial evidence, but Brecht, do we — why do we assume that if — I mean, it seems to me you're coming close to conceding that on his confession, there was premeditated deliberate murder. Well, let me disclaim that immediately, Your Honor. I am not coming close to conceding. All right. But you're not even — you're not arguing. You're arguing this other. So this is what I want to know. If we thought that on his confession, any juror, no matter how — I mean, I think that not only this — I mean, I can tell you that not only this piece of prosecutorial misconduct, but a lot of the rest of it was, you know, completely out of bounds, right? But if any jury, no matter what this prosecutor said, would have found on the confession first-degree murder, why are we worrying about the felony murder? I mean, for Brecht purposes, as to whether it would likely have affected the verdict. I'll submit it's because even though he admitted to the homicides, he did not admit to premeditation and deliberation. No, I understand that. But he admitted that he killed one of them so that she wouldn't tell, and he thought about it, and that he killed the other one for the same reason. And he was specific about the fact that he was — he thought about it, and he said he was in a panic, but he also said, you know, I wanted to make sure that I didn't tell anybody. Well, but the panic — first of all, this statement comes a deal later when he has thought about it for some time. And I think both — But I was asking you — before we get to that, I was asking you a different question, which is why are we worrying about the felony murder if the other one was — would have been for Brecht purposes such that we would think a jury would have, no matter what the prosecutor said, convicted them of that? In other words, then we don't worry about the felony murder for this purpose. You might worry about it for substantial evidence purposes, but you wouldn't worry about it for this purpose, would you? We're not conceding that this establishes premeditation and deliberation. I understand that. I'm just asking you a sort of a structural question. Which is, even if there are two possible theories, and one of them is weaker than the other, why do we look at the weaker one instead of the stronger one for harmless error purposes? If we take the premeditation theory as the stronger one, your Honor said the word, panic. Mr. Sechrest is out there with two young girls, and something happens. And his account of it, in some respects, and as the prosecution — You can intend to kill just like that in a flash. It's not a question of whether you can. It's the question, did you? Well, this is what the evidence shows. And the evidence that we have that showed maybe he thought about it is the same evidence that shows that he panicked and then tried to cover it up. And that's — it is certainly not unknown in our practice to see offenders who do something and try to cover it up. But that doesn't mean that they intended to do the worst possible thing from the beginning. The fact that they attempted to cover it up means they realized they did something wrong. Let me — I'm trying to get my hands around the structure of your argument. Let me give this — let me try it this way. I think you're asking us to assume that the jury convicted on a theory of felony murder and did not convict on a theory of first-degree murder. And if the only thing that the jury was unanimous on was felony murder, you're saying the evidence of that was somewhat weak, which then means that it wasn't necessarily harmless — that it wasn't harmless error because there really was misconduct that tipped the jury in favor of conviction. Am I understanding the structure of your argument? I think that is — that I have expressed myself badly, if you think, Your Honor, that that's the only structure. I am saying there are weaknesses in both the premeditation and deliberation and felony murder theories. The — because of the evidence placed on the kidnapping issue and the resultant basis for felony murder, and, you know, this kind of global prosecutorial misconduct affects both. I began with that. But I do not concede by any means that given that the evidence that is relied upon to say he premeditated and deliberated is the same evidence that contains his statement that he panicked. And at that point, maybe he did not premeditate and deliberate. Maybe this is a second-degree murder. Okay. But let me — again, I'm trying to understand the structure of your argument. For us to get to the point in your argument where felony murder is even relevant, I think you have to persuade us that it was sufficiently unlikely that this is just an ordinary first-degree murder conviction that we even reach that question. Respectfully, Your Honor, I don't agree, because we have a general verdict here. We do not know what the jury did. The question I was asking you, basically. I mean, that is, it has to do with how this fits into a Brecht analysis in terms of harmless error, why we have to go to the, let's assume, weaker theory over the stronger theory. I don't know if I'm just expressing myself badly. But we have these two theories. Let's assume that there's a weaker theory and a stronger theory. Structurally, why in a Brecht analysis do we go to the weaker theory over the stronger theory? Because we have a general verdict, and you cannot be convinced on this record that the jury — But we don't have to be convinced. We have to — I mean, Brecht is a projection about whether essentially the jury — whether there are substantial possibilities the jury would have done something different had all of this not happened. And that includes some projection about what the jury probably did. But which is, respectfully, Your Honor, something that can't be resolved on this record as to which theory it is. I mean, harmless error and Brecht is by definition a counterfactual exercise. But I think my underlying point is that in terms of this misconduct, I do not believe that the jury could, on either theory, fairly consider the evidence when their lawyer — Can we switch gears a little? Sure. I'm a little curious about why, since we granted COA and all these other prosecutorial misconduct questions, you're not arguing them, and you're not arguing the accumulation. I mean, there are lots of sort of procedural problems embedded in the rest of it. But if I were to look at the prosecutorial misconduct issues, I would want to look at the bulk of them at least as to ones that were properly before us. So could you help me by telling me what is properly before us and maybe some clue as to why you didn't start out with the bulk instead of this one? Well, respectfully, Your Honor, I didn't get to the bulk. We got to Brecht almost immediately. But my position is that all of these instances of misconduct are before you because I don't understand the rule of mandate as saying that the district court could not consider all of the misconduct that was presented. And, in fact, in this Court's previous decision, this Court looked at all of the instances of misconduct, all of the errors, whether or not they independently could be viewed as a reversible error by themselves. And in looking at the entire record for purposes of evaluating the effect of misconduct, this Court has to look at the whole record. And when the prosecutor, who has characterized himself as the jury's lawyer, says second-degree murder, my behind, that's an expression of personal opinion. That is something that is trying to counter the argument of defense counsel, who argued strongly exactly what we're talking about, that there was no kidnapping and that there was no premeditation and deliberation. So in looking at all of the misconduct put together, and most of it is misconduct that falls within accepted categories, the identification with the jury, the abuse of language toward the defendant, the expressions of personal opinion, which are strewn. I mean, this is only about a 20-page closing argument by this prosecutor. And I think his vehemence really jumps at the page at you. And in looking at the likely effect of that on a jury, which is looking at serious questions about whether there was premeditation or deliberation and whether there was intent to commit an untoward act that would underlie the kidnapping charge, how can the jury resolve those evidentiary questions fairly when they are basically being given their marching orders by their lawyer? If I could reserve the rest of my time. Thank you. Well, what's the – well, we'll hear from the State. Okay. Thank you. Good morning, and may it please the Court. My name is Heather Proctor. I'm a senior deputy with the Nevada Attorney General's Office, and I have the honor of representing the Respondents in this matter. Based on the absolute overwhelming evidence of guilt in this matter, any alleged prosecutorial misconduct that this Court may find exists is harmless. Seekers admitted killing Maggie Schindler to cover up the death of Carly Villa.    We are not going to cover up what he had just done to Maggie, and a prosecutor's comments did not have a substantial and injurious impact on the jury. Unless the Court has questions about specific statements, as far as the claims that are actually before this Court, on mandate, this Court on the order of remand, the can you just one thing I wondered about was where in our original opinion did we actually say anything about the prosecutorial misconduct? In the 2008 opinion? Excuse me. I mean not the one that we reversed on, but this chunk of prosecutorial misconduct, going to conviction. For the remand? Yes. I don't have the order in front of me, Your Honor, but you found that based on intervening case law pursuant to Valera? Not that, but I didn't see any mention actually of the prosecutorial misconduct as one of the things that was left open. I mean, I don't think that's a problem. I think it's more of an illustration of the fact that we're just saying whatever was thrown out before. Absolutely. But I don't think there was any mention in the opinion of prosecutorial misconduct. And that's the problem is he was told he could reallege his previously defaulted claims. Well, what he did was he came back and he realleged those claims and added brand new claims that were never presented in his second amended federal habeas petition. That fell outside of the mandate, and that covered grounds for C, D, E, and F. Moreover, he admitted that the claims presented in grounds for D, E, and F were unexhausted. Those claims were not properly before the Court in the fourth amended federal habeas petition, and they should not be before the Court in this case because they are they were not properly raised in the fourth amended federal habeas petition, and they remain unexhausted. So the only claims really before this Court are grounds for A, B, G, H, and I. Assume for the purposes of your answer to this question that I disagree with you, that all of those claims are properly in front of us, and assume further that every thing the prosecutor did for which Mr. Sechrist contends that was prosecutorial misconduct was, in fact, misconduct. In other words, assume absolutely the worst from your standpoint. Yes. Was the error, were the cumulative errors nonetheless harmless? Absolutely not, Your Honor. Because? The evidence in this matter was absolutely overwhelming of premeditated and deliberate murder. This man admitted that he picked up these girls. He was not supposed to pick up these girls. He took them to a location where he knew he wasn't supposed to be in a remote location off the main road. He took them out, and after Carly's supposed fall, he chased down Maggie and took a rock and bashed her in the head. And once she was down, he took that rock with both hands and he bashed her three to four times. And he said, and then she wasn't dead, so I hit her again, and I hit her again, and I hit her again. He meant to kill her because he did not want her telling her mom or telling anybody what had happened to Carly. Why? Carly had fallen. Why would he be so upset about Maggie telling anybody? According to him, Carly had fallen. There is certainly evidence to support some suggestion that the leash was there. One aspect of the leash was it was discovered by Maggie's body. However, it had a hair from Carly or a hair that was identified similar to Carly in the leash. Well, I thought the only hair was one that was similar to one in the car, but that was the best he could do. Actually, there were two hairs, Your Honor. One was similar to seacrest that connected it to the car, and there was a second hair identified as similar to Carly. Well, hair evidence, when they say similar, that's pretty shaky evidence. We know the forensics on, quote, similarity of hair. That's a good way to make a mistake is to conclude it's the same. Well, Your Honor, it was certainly there. We certainly have the leash. I'm not trying to wish that of a lawyer. Of course not. Similar is very different from identical. Certainly. And that's why I'm saying it is similar and not identical. I gather that Mr. Preseda is correct that the charge, the kidnapping charge, was kidnapping to commit a lewd or lascivious act, so he had to intain to have done that. The kidnapping charge was based on sexual assault, lewdness, or murder. Okay. So it was a murder. But all of those require that at the time of the kidnapping he intended, you know, something other than just taking them to this place. So is that the reason for all this stress on the leash? I mean, I couldn't quite figure it out. Your Honor. The only evidence that there was an intent to commit a sexual assault at the time of the kidnapping? There is certainly some suggestion that the leash was involved, whether it was because of the kidnapping, whether it was because he tied her up to drag her out there. Okay. The prosecutor kept talking about it and, you know, the connective was completely speculative, actually. Well, Your Honor, most of the evidence of what actually happened out there was, of course, from Seacrest's statement. However, the leash was there. The prosecutor did suggest, based on the evidence, that perhaps Carly had not fallen, perhaps she was dragged out there by the leash, and that was why Maggie was there. When he said, I thought about what it would be like to rape a girl, was that – did he say that he thought about that after he killed her, or did he say that he thought about it before? Yes, Your Honor. That was not really clear from the statement. That's at page 1081 of his statement. Excuse me. Excerpt of record 1081. And he did talk about it, that after he had declothed Maggie, that after he had hit her, he seriously thought about what it would be like to rape a girl. However, it really wasn't clear if that thought only came up after he had declothed Maggie, or if that was a thought that had been there when he first picked up these girls and taken them to his remote location. So it would seem that the evidence on the kidnapping, the purposes for the kidnapping, was pretty weak. So whether he was kidnapping her for sexual assault, for sexual purposes, or kidnapping them for murder, at the time of the kidnapping, it doesn't seem to be an abrupt sort of way. You would think that if that's all we had here, that the prosecutorial misconduct really could have made a difference. It wasn't very convincing evidence, or particularly strong evidence. Your Honor. The motive for the kidnapping, as opposed to whether there was a kidnapping. Well, and there is a question about, well, is the kidnapping when he picked them up at Midwood Mall, is the kidnapping when he had them out at the canyon, and perhaps with this leash he had one of the girls and took them down there? I advise you that for my purposes to forget the leash, because the leash is really weak evidence. Okay. Somebody could have been walking a dog the day before. So go ahead. Well, certainly there is evidence that even he picked these girls up from Midwood Mall. He shouldn't have been there. He knew that he was not supposed to be picking up Maggie. He kidnapped them. We understand that. Okay. Even with just enticement, he kidnapped them. The question is, did he kidnap them for one of the purposes that he was alleged to have kidnapped them to make a first-degree kidnapping? Well, I certainly think it's supported by the fact he takes them to this remote location, this canyon. If he's kidnapping them, why is he going to take them to this remote location if he doesn't have some idea of what he's going to do to these little girls? I mean, Maggie, he said that Maggie was like a sister, and he decides to run her down and bash her head in with a rock. There is some thought, though, that he is going to do something to these little girls based on the evidence, based on his confession and based on the evidence that was out there. Well, if this were a straight question of no prosecutorial misconduct and it were just an evidentiary question, is there enough evidence in this record from which a reasonable jury could permissibly have concluded beyond a reasonable doubt that he kidnapped them for one of the nefarious purposes? I think the answer is yes. But that's not quite the way the question is presented to us. The way the question is presented to us, did the prosecutorial misconduct under Brecht make this into harmful error, such as to undermine the evidence that does exist that would support it if this were just a straightforward conviction without any misconduct? Your Honor, I would say that the prosecutorial misconduct, the alleged prosecutorial misconduct does not, because even if, as you suggested, which I certainly don't concede, but as you suggested, we take all of the prosecutorial misconduct claims as true, they do not have a direct impact on the confession. The jury heard the confession, they heard the tape, and they had the transcript to follow along with that confession. Nothing that the prosecutor said in this case undermines the evidentiary value of that confession. Nothing. What about the structural question that both Judge Fletcher and I were asking your opponent about? That is, how does one do a Brecht analysis in this case in which, first of all, do you agree that there were two possible theories of the district that the jury could have? Yes. Okay. If we thought one was weaker and one was stronger, how do we do a Brecht analysis at that point? In other words, do we assume the weaker one or do we assume the stronger one, or what? Yeah, I certainly would agree with that. If there is a method to support the verdict in this case, and if it is a weaker analysis... It's not sufficient that there – this is what Judge Fletcher was just saying. It's not sufficient that there be evidence to support the verdict. We know there was evidence to support either verdict. The question is whether the – and I would say extreme prosecutorial misconduct in this case, and I would say that even if you took out the pieces that you're disputing are properly before us. Because the other chunk that is properly before us is all this calling on the community, outrage and so on, which is another whole category that's been often condemned. And also, I think also before us is this second-degree murder, my behind, and that is also a category. So there are at least several categories that are properly before us and are extreme. All right. Starting from that, do – if we thought that the first-degree murder, the premeditated murder evidence was still so strong that we wouldn't – that underbreak, we wouldn't – if that was all that was there, we would say it's harmless. But we thought that the felony murder wasn't so strong that if it was correct, we would say it was harmless. Then what do we do? Well, to preface, I would just preface to say I think that the evidence is strong to support both theories. However, I do believe that if the evidence is overwhelming as to the premeditation deliberation, there's absolutely no question that any jury would not have found this man guilty based on a premeditation and a deliberation theory than that is sufficient for bracket purposes. In some ways, you would be – this would be a much easier case if you'd never charged kidnapping. Potentially. Because all you'd have then is first-degree murder. Yeah. But he did commit kidnapping, so. Yeah, no, I understand why it was charged. Was the kidnapping a special circumstance? Was it one of the bases for the death penalty? Is that why it was there? I don't know if that's why it was there. I certainly don't know the thought processes of the district or anybody. But it was an aggravated circumstance. For the death penalty. It was an aggravator, yes. Okay. I see some – yeah. Was it more than an aggravator? Was it necessary to make the case even death eligible? I – I don't know, Your Honor. I know that there were four aggravators in this case. One of them was also based on a sexual assault. And – and in our prior opinion, my recollection is that the suggestion was that three of the aggravators were – were probably involved. That is – Is this the fourth one or is this one of the three? It's one of those, Your Honor. One of the three. Correct. I see. So if the case was – if there was – because another possibility in this case, and I don't know – you might want to tell us how likely it is, but I don't – is a retry on the death penalty in this case. Correct, Your Honor. The – based on your prior holding, the resentencing has been stayed. So, of course, that would be something based on the district attorney's decision and I don't know what they're going to do with that. But in any event, in all likelihood, there's one aggravator left. Yes. Okay. The judge did instruct the jury that the comments and the remarks of the lawyers are not evidence in the case. Absolutely, Your Honor. There's actually two instructions to that effect. There was – during Instruction 22, there was also during Instruction 18, which is located at Excerpt of Record 863, in which the court instructed the jury, you are to be governed solely by the evidence introduced in this trial and the law as stated to you. A little slower, please. Excuse me. You are to be governed solely by the evidence introduced in this trial and the law as stated to you by me. In addition, during the opening statement, defense counsel informed the jury nothing in prosecutor's opening statement is evidence and nothing I say is evidence. Excuse me. Nothing in prosecutor's opening statement is evidence and nothing I say is evidence. These are just summaries. The only evidence you should consider is what you are going to hear from the witnesses that testify and the documentary evidence that is going to be presented. In addition, at the beginning of his closing statement, the prosecutor cited a jury instruction and stated, it says nothing counsel say and do in the trial is evidence in the case. The evidence in the case consists of the testimony, witnesses, and all physical and documentary evidence which has been admitted. You are to consider only the evidence in this case. So the jury was certainly instructed multiple times by both counsel and the court that the prosecutor's statements were not evidence. You know, this trial took place a long time ago, basically 30 years ago. Yes, Your Honor. And you may or may not know the answer to this. It appears, as I just read the transcript, I read what the prosecutor said, the lack of any sort of interjection by the defense or interjection by the judge, that this, in Nevada courts at the time, everybody seemed to think was all right. What's the practice in Nevada prosecutors now? Is anything even close to this happening now? Your Honor, I'm certainly not going to concede that there's prosecutorial misconduct in this case. You should. The only question is how much. However, I believe that both, or excuse me, not both, but prosecutors and defense attorneys and the trial court would be more receptive to comments. I rarely see transcripts anymore without any objections logged or cautionary instructions, particularly in death penalty cases, in the last many years. Okay. I can't attest to the differences from 1983 to present, but. Yeah. Okay. Well, the prosecutor in this case did become a judge later on. Yes, he did. And he recently passed away. I think I read something in the paper about that. I know he had a stroke several years ago. I don't know. I know he's had a stroke many years ago. I don't know that he passed away. I'm not sure about that. But he was the well-known throughout Nevada as a boxing referee. Yes. And didn't he have his own television show? Yes. He's very well-known in Nevada. Like Judge Judy. Yes. Yeah. Unless the Court has further questions. What about the judge that presided over this trial? Your Honor, I don't have additional information about that judge. All right. Thank you very much. Thank you. To answer Judge Berzon's question, what this Court said in the prior opinion was, we also hold, however, that Sechrist's previously defaulted claims, which include both guilt and penalty-phase claims, should not have been barred from Federal habeas review. We remand these claims to the District Court for appropriate consideration. It's just that they also went through, we also went through what claims we thought we were talking about, and we didn't mention this one, but that doesn't particularly bother me because they were, it wasn't one of the claims that was held default. It's, it's, it, it was. This, as I understand it, because it had not been addressed by the District Court. This, this, if you recall, this was a case where there was a, there were defaults. Try speaking a little louder. I beg your pardon. Where the default ruling had come while the case was pending in this court many, many years ago. It was then interpreted by the District Court as eliminating all of the claims that weren't at that point found exhausted and not procedurally defaulted. And this court's decision revived all of those claims. But our view of the mandate rule is that saying appropriate consideration of these other claims does not mean you can't amend. It doesn't mean that you can't consider anything but exactly what was there before. Well, I mean, that's true up to a point. The question is, you know, whether this crossed that point. Because there were, the problem is that there were, I mean, there's, there are kind of, the prosecutorial misconduct claims come in chunks as to which the theory of why it was prosecutorial misconduct differs quite substantially. So, I mean, for example, some of them had to do with these religion references and some of them had to do with misstating, with the suggestion that he was misstating the instructions with regard or the reasonable doubt instructions. And some of them have to do with this community, you know, calling on the community which was exhausted. And some of them have to do with the part that I found most distressing, all this sort of gay-bashing stuff. But they're wrong, they're misconduct for all different reasons. But in the correct analysis, Your Honor, whether it was... Well, I know that. But this goes to the procedural problem, i.e., whether you can allege, whether it's sufficient to say there was prosecutorial misconduct or even prosecutorial misconduct in the opening and closing statements and then start making, not only calling on different sub-statements, which I think you can do, but different complete categories of misconduct with regard to the rationale for why it was misconduct. I think in terms of the effect of the misconduct on the jury, of even the admittedly... I'm at a different point right now. I'm saying that even if we concede that those additional instances of misconduct are not properly before the court... Oh, well, that is true. But I was trying to be... As misconduct themselves. What I'm saying is that you would still have to consider whether the effect of the misconduct that Your Honor has already indicated exists or that you believe exists is part of or if affects the jury in a way that, for instance, when the prosecutor says that if you know it in your heart, that's beyond a reasonable doubt. But there's a question that Your Honor asked that I think that I just have to quote EOR 210. The defense argument was at second degree. Well, who... This is the prosecutor. Well, who put for a second degree my behind? This is a willful, deliberate, premeditated act, and beyond that, beyond that murder in the first degree, it is not only willful premeditated murder, it is also murder committed in the perpetration or attempted perpetration of sexual assault, a sexual molestation, and to avoid lawful arrest. So there is no question that both of these theories were before the jury, and essentially, I think, we cannot balkanize these theories. If you can't find harmlessness beyond or harmlessness underbred as to both, we're basically in a Stromberg situation. You're saying not we're reviewing what the jury did because we can't really tell what the jury did, which theory they relied on. We are going to say that this one theory that we think is overwhelming, that's what they should have relied upon, and that's why we will uphold the conviction. And I suggest that the Court shouldn't do that. Thank you. Thank you. All right. The Court is adjourned. Thank you.
judges: Pregerson, Fletcher, Berzon